## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FEDERAL NATIONAL**
**MORTGAGE ASSOCIATION**                    **CIVIL ACTION**

**VERSUS**                                                          **NO: 24-2114**

**DAMON J. BALDONE**                                 **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Plaintiff Federal National Mortgage Association's Motion for Partial Summary Judgment (Doc. 25). The Court also takes judicial notice of facts describing relevant foreclosure and bankruptcy proceedings contained in Plaintiff's Request for Judicial Notice (Doc. 26). For the following reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

This diversity case arises out of the repayment of a Multifamily Note ("the Note") dated December 10, 2010 and executed by Chateau Creole Apartments, LLC ("Chateau") in favor of Walker & Dunlop, LLC ("Lender").[1] In conjunction with the Note, Chateau executed a Multifamily Mortgage, Assignment of Rents and Security Agreement ("Security Instrument") in favor

---

[1] Doc. 25-4.

of the Lender,[2] and Defendant, Damon J. Baldone, executed an Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability ("Acknowledgment') wherein he agreed to be Key Principal for Chateau.[3] On the same date, Lender assigned the Security Instrument to Plaintiff, Federal National Mortgage Association.[4]

In October 2017, Plaintiff filed a foreclosure proceeding against Defendant and Chateau in the 32nd Judicial District Court for the Parish of Terrebonne.[5] In January 2018, Chateau initiated a voluntary bankruptcy proceeding in the Bankruptcy Court for the Eastern District of Louisiana.[6] The Bankruptcy Court entered an Order confirming the Amended Plan of Reorganization in February 2019.[7] On March 7, 2019, Plaintiff and Chateau executed an Assumption and Modification Agreement to modify the Note according to the Amended Plan of Reorganization.[8] Defendant confirmed his consent to the modification through the Consent and Agreement of Key Principal/Guarantor.[9] That same day, Chateau, Plaintiff, and Defendant entered into an Amendment and Allonge to the Multifamily Note, which extended the maturity date of the Note to March 7, 2023.[10] These documents, including the Note, Security Instrument, and Acknowledgment, are collectively referred to by the Parties as the "Loan Documents."

On March 13, 2020, the President of the United States declared a federal emergency in response to the COVID-19 pandemic, and in response, Congress

---

[2] Doc. 25-5.

[3] Doc. 25-4 at 11–13. The Loan Documents use the words "Key Principal" and "Guarantor" interchangeably.

[4] Doc. 25-6.

[5] Doc. 26 at 1.

[6] *Id.*

[7] *Id.* at 2.

[8] Doc. 25-7.

[9] *Id.*

[10] Doc. 25-8.

passed the CARES Act.[11] Pursuant to the CARES Act, Chateau was granted a series of eight forbearances ("Forbearance Agreements"), dated between April 13, 2020 and December 1, 2022, wherein Plaintiff agreed to forbear exercising its rights under the Loan Documents.[12] During this period, Chateau's mortgaged property was severely damaged by Hurricane Ida, compounding the economic hardship caused by the COVID-19 pandemic.[13] A dispute as to insurance proceeds for this catastrophic event arose between several of Defendant's business entities, including Chateau, and their insurer.[14] Defendant and Chateau filed a lawsuit against their insurer and Plaintiff intervened.[15]

Meanwhile, Chateau and Defendant, as the surety, failed to pay the amounts due by the Note's maturity date, and Plaintiff sent a Notice of Maturity Default and Demand for Repayment on April 21, 2023.[16] In response, Chateau, Plaintiff, and Defendant executed a pre-negotiation letter ("PNL") on May 11, 2023, confirming the default and setting preliminary terms for repayment negotiations.[17]

In September 2023, Plaintiff instituted a second foreclosure action against Chateau and Defendant in the 32nd Judicial District Court for the Parish of Terrebonne, and a keeper was appointed on Plaintiff's motion.[18] Defendant thereafter initiated a second voluntary bankruptcy proceeding in the Bankruptcy Court for the Eastern District of Louisiana.[19] In the second

---

[11] *See generally* 15 U.S.C. §§ 9001–141.

[12] Doc. 25-9.

[13] *See* Doc. 31.

[14] *Id.*

[15] *See generally* Complaint, *Damon J. Baldone, LLC v. Starr Surplus Lines Ins. Co., et al.,* No. 2:22-cv-01903, (E.D. La. June 23, 2022).

[16] Doc. 25-10.

[17] Doc. 25-11.

[18] Doc. 26 at 2.

[19] *Id.*

bankruptcy proceeding, the Bankruptcy Court approved the appointment of a trustee with Chateau and Defendant's consent.[20]

Plaintiff brings this action against Defendant as Chateau's surety for the Note, seeking to recover the unpaid balance. Plaintiff's instant Motion asks this Court to render summary judgment as to Defendant's liability, reserving the issue of damages. Defendant opposes.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[21] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[23] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[24] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[25] "In response to a properly supported motion for summary judgment, the non-movant must

---

[20] *Id.*
[21] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[22] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[23] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[24] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[25] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[26] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[27] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[28]

## LAW AND ANALYSIS

Plaintiff asks this Court to grant partial summary judgment as to the personal liability of Defendant for all amounts that may be due to Plaintiff by Defendant and/or Chateau under the Loan Documents. Plaintiff contends that Defendant's personal liability is incurred by operation of contract and that Defendant contractually waived all defenses to personal liability as a condition of the Loan Documents, Forbearance Agreements, and the PNL, thereby permitting this Court to render summary judgment on Defendant's liability as a matter of law. Defendant opposes on that grounds that summary judgment is premature, that all contractual waivers are ineffective as to his defenses, and that his raised defenses preclude a summary judgment on liability.

### 1. Availability of Summary Judgment

At the outset, Defendant asserts that summary judgment is premature as he has not had the opportunity to complete adequate discovery, stating "no discovery, written or otherwise, has taken place in this case."[29] Defendant asks

---

[26] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[27] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[28] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[29] Doc. 31 at 15.

this Court to deny the instant Motion to permit him additional time to discover facts that may support his defenses to liability, including evidence of Plaintiff's alleged bad faith dealings with Chateau's insurer and improper impairment of Defendant's collateral.[30]

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may deny the motion or defer its consideration, allow the nonmovant additional time for discovery, or "issue any other appropriate order." "To justify a continuance, the Rule 56(d) motion must demonstrate (1) why the movant needs additional discovery; and (2) how the additional discovery will likely create a genuine issue of material fact."[31] The Rule 56(d) movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[32] Further, "[i]f the requesting party 'has not diligently pursued discovery, however, [he] is not entitled to relief' under Rule 56(d)."[33]

Defendant has not satisfied the requirements for relief under Rule 56(d) because he has not shown by affidavit or declaration that he can identify specific facts that would plausibly affect the outcome of the pending motion. Further, the discovery deadline in this matter is November 7, 2025. As of October 24, 2025, no motions to compel or to extend discovery have been filed, and Defendant has not requested leave to supplement his response with

---

[30] *Id.* at 15–16.

[31] Weaver v. Harris, 486 F. App'x 503, 505 (5th Cir. 2012) (citing Stearns Airport Equip. Co v. FMC Corp., 170 F.3d 518, 534–35 (5th Cir. 1999)).

[32] McKay v. Novartis Pharm. Corp., 751 F.3d 694, 700 (5th Cir. 2014) (quoting Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010)).

[33] *Id.* (quoting Beattie v. Madison Cnty. Sch. Dist., 254 F.3d 595, 606 (5th Cir. 2001)).

additional information since he filed his Opposition on April 22, 2025. Additionally, the instant motion calls for the interpretation of contracts and can be decided as a matter of law. Where Defendant argues factual inquiry is required, he has failed to set forth a plausible basis that further discovery will lead to facts that preclude summary judgment. Accordingly, Defendant's request to deem the motion as premature is denied.

### 2. Defendant's Personal Liability

In support of its motion, Plaintiff points to three "trigger" events under the Loan Documents that subject Defendant to personal liability, namely: (1) the appointment of a keeper with Defendant's consent; (2) the appointment of a trustee with Defendant's consent, and; (3) Chateau's voluntary filing for Bankruptcy with Defendant's consent.

Louisiana law governs the interpretation of all contracts in this dispute. "Contracts have the effect of law for the parties and . . . must be performed in good faith."[34] "When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law."[35] "The words of a contract must be given their generally prevailing meaning."[36]

In Louisiana, "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."[37] "Suretyship must be express and in writing."[38] Pursuant to the Acknowledgement, Defendant, as Key Principal, "absolutely, unconditionally and irrevocably agree[d] to pay to Lender, or its assigns, on

---

[34] LA. CIV. CODE art. 1983.
[35] Wooley v. Lucksinger, 61 So. 3d 507, 558 (La. 2011) (quoting Sims v. Mulhearn Funeral Home, Inc., 956 So. 2d 583, 590 (2007)).
[36] LA. CIV. CODE art. 2047.
[37] Id. at art. 3035.
[38] Id. at art. 3038.

demand, all amounts for which [Chateau] is *personally liable* under Paragraph 9 of the Multifamily Note."[39] Here, Defendant expressly agreed to pay all amounts for which Chateau is personally liable, thereby establishing him as Chateau's surety. With clear contractual language guaranteeing Defendant's payment for Chateau's personal liability under the Multifamily Note, the question becomes whether Chateau has incurred personal liability.

Paragraph 9 of the Multifamily Note generally excludes Chateau's personal liability.[40] However, "[Chateau] shall become personally liable to Lender for the repayment of all Indebtedness upon the occurrence of," *inter alia*, "a Bankruptcy Event (but only if the Bankruptcy Event occurs with the consent, encouragement, or active participation of [Chateau], Key Principal, or any [Chateau] Affiliate)."[41] Under the Loan Documents, a "Bankruptcy Event" includes:

> (i) the commencement of a voluntary case under one or more of the Insolvency Laws by [Chateau]; . . . (v) the appointment of a receiver, liquidator, custodian, sequestrator, trustee, or other similar officer who exercises control over [Chateau] or any substantial part of the assets of [Chateau] provided that any proceeding or case under . . . (v) above is not dismissed within 90 days after filing.[42]

Here, Plaintiffs argue that three separate "Bankruptcy Events" occurred that satisfy the contractual definition: (1) Chateau's consensual initiation of Bankruptcy proceedings; (2) the appointment of a keeper; and (3) the appointment of trustee. The Court takes judicial notice of the occurrence of

---

[39] Doc. 25-1 at 11 (emphasis added).

[40] Doc. 25-4 at 4.

[41] *Id.* at 5.

[42] Doc. 25-5 at 12. The term "Bankruptcy Event" is not defined in the Multifamily Note, but rather in the Security Instrument. The Court reads these documents, executed by the same parties on the same day, *in pari materia* to determine the Parties' intent as to the meaning of "Bankruptcy Event."

each event.[43] Both the voluntary initiation of Bankruptcy proceedings and the appointment of a trustee are expressly listed in the above definition. While not expressly listed in the contract's definition of "Bankruptcy Event," a keeper is Louisiana's term for a receiver.[44] Further, Plaintiff alleges that neither proceeding that appointed the keeper or trustee were dismissed within 90 days after filing; Defendant presents no evidence to the contrary.[45] Thus, each of these events fall within the clear definition of "Bankruptcy Events" under the Loan Documents.

Personal liability does not attach, however, unless Chateau, Defendant, or any of Chateau's affiliates consented to, actively participated in, or encouraged the occurrence of one of the Bankruptcy events.[46] The Parties agree that Chateau and/or Defendant consented to the initiation of bankruptcy proceedings and to the appointment of a trustee.[47] Accordingly, the Court finds that Chateau was subject to personal liability under the Loan Documents due to the occurrence of one or more contractually defined bankruptcy events. The Court further finds that, as surety for Chateau, Defendant is liable for the sums due by Chateau under the Multifamily Note.

### 3. Defendant's Waiver of Defenses

Having established that personal liability for Chateau's debts has attached to Defendant under the Loan Documents, the Court turns to whether Defendant may assert any defenses. Plaintiff avers that Defendant cannot

---

[43] *See* Doc. 26.

[44] LA. REV. STAT. § 9:5138 ("The keeper or receiver shall perform his duties as a prudent administrator, and . . . shall have full powers of management and administration of the property and may operate the property seized . . . in the ordinary course of business.").

[45] Doc. 25-1 at 7.

[46] Doc. 25-4 at 5.

[47] Doc. 25-2 at 5; Doc. 31-2 at 3–4. As the occurrence of one Bankruptcy Event is sufficient to incur personal liability, the Court need not reach the question of whether Defendant and/or Chateau consented to the appointment of a keeper in the second bankruptcy proceeding.

avoid liability through his raised affirmative defenses given his contractual waiver of "any and all defenses in the Acknowledgement, the Forbearances, and the PNL."[48] Defendant counters that the purported contractual waivers of defenses cannot operate as a release of future actions as they do "not clearly and specifically waive Baldone's defenses" as required under Louisiana law.[49]

While a "surety may assert against the creditor any defense to the principal obligation that the principal obligor could assert except lack of capacity or discharge in bankruptcy of the principal obligor," the parties may modify, limit, or waive the surety's rights.[50] "Waiver is 'the intentional relinquishment of a known right, power, or privilege.'"[51] "[T]o the extent a guarantor contractually waived one of his rights under the Civil Code, he may not later escape liability under the guaranty on the basis that such a right has been violated."[52]

To curb Defendant's arguments that the waivers were insufficient as to future defenses that were not known at the time of contracting, the Court need only address the May 2023 PNL.[53] At the time of the PNL, each of the raised defenses were known to Defendant, as the PNL was executed after the COVID-19 pandemic, Hurricane Ida, and the Defendant's disputes with his insurer. The PNL reads as follows:

> As Additional consideration for [Plaintiff's] willingness to engage
> in discussions about possible resolution of the accelerated

---

[48] Doc. 25-1 at 8–10.

[49] Doc. 31 at 14.

[50] LA. CIV. CODE arts. 3046, 3040; Hancock Bank of La. v. Advocate Fin., LLC., No. 10-132-FJP-SCR, 2011 WL 94425, at *3 (M.D. La. Jan. 11, 2011).

[51] Fed. Nat'l Mortg. Ass'n. v. Bruno, No. 22-2588, 2023 WL 3791452, at *9 (E.D. La. June 2, 2023) (quoting Steptore v. Masco Const. Co., 643 So. 2d 1213, 1216 (La. 1994)).

[52] *Hancock Bank of La.*, 2011 WL 94425, at *3.

[53] Although the Court finds that the PNL is sufficient to waive any and all defenses raised by Defendant, the Court also believes that the waiver language in the Acknowledgement and Forbearances is sufficiently clear and express to constitute valid waivers. *See* Docs. 25-4 at 11 and 25-9 at 21–22, 28–29, 36, 43, 51.

> Mortgage Loan, [Chateau] and Key Principal/Guarantor hereby waive and release any and all claims that they may have against [Plaintiff] or the Servicer related to the Mortgage Loan as of the date of this letter. Furthermore, [Chateau] and Key Principal/Guarantor further *waive and release any and all defenses* that they may have to the rights and remedies of [Plaintiff], and as appropriate, the Servicer, under the provisions of the Loan Documents and applicable law. Should any of the parties hereto terminate the discussions contemplated under this agreement . . . the waivers and releases of claims and defenses by [Chateau] and Key Principal/Guarantor shall survive such termination.[54]

In contracts governed by Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[55] The PNL clearly states that Chateau and Defendant agreed to "waive and release any and all defenses that they may have to the rights and remedies of [Plaintiff]," which constitutes a valid waiver.[56] Accordingly, the Court finds that Chateau and Defendant validly waived all of their defenses, including those raised by Defendant in his Opposition to summary judgment, and summary judgment as to Defendant's liability can be rendered as a matter of law.

### 4. Defenses to Performance

Notwithstanding the Court's ruling on the contractual waivers, Defendant asks this Court to deny summary judgment and/or to excuse his and/or Chateau's deficient performance under the Loan Documents, in whole or in part, due to (1) *force majeure* causing alleged impossibility of performance, (2) the novel *Théorie de L'Imprévision*, (3) Plaintiff's alleged bad faith, and (4)

---

[54] Doc. 25-11 at 3–4 (emphasis added).
[55] La. Civ. Code art. 2046.
[56] *Fed. Nat'l Mortg. Ass'n.*, 2023 WL 3791452, at *8.

Plaintiff's improper impairment of collateral.[57] The Court will address each in turn.

Defendant alleges three compounding fortuitous events, or *force majeure*, rendered performance of his obligations under the Loan Documents impossible, namely the COVID-19 pandemic, Hurricane Ida, and his insurer's delay in issuing payment after Hurricane Ida caused damage to the mortgaged property. "An obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance *impossible*."[58] "A fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen."[59] Whether or not each alleged event could have reasonably been foreseen, none of the events rendered performance impossible.[60] It is well settled law that an obligor's economic hardship does not render an obligation to pay impossible.[61] Here, Defendant's impossibility arguments hinge on his, and Chateau's, inability to source additional funds

---

[57] Defendant does not oppose summary judgment with factual support for his remaining affirmative defenses, namely: failure of consideration; contractual terms which bar or limit Plaintiff's claims; waiver, estoppel, or unclean hands; res judicata, claim preclusion, and/or issue preclusion; prescription and/or statute of limitations; negligence of third parties; misrepresentations by Plaintiff in Chateau's bankruptcy proceedings; and, offset. *See generally* Docs. 9 and 24.

[58] La. Civ. Code art. 1873 (emphasis added).

[59] *Id.* at art. 1875.

[60] The Court notes that Defendant "would likely concede that" Hurricanes are a known business risk and that he does consider them "as a prudent manager." Doc. 31 at 9–10. The Court further notes that the Loan Documents and Forbearance Agreements explicitly indicate that Plaintiff may receive insurance disbursements and, at Plaintiff's option, either reimburse Chateau for the costs of repairs made at Defendant's cost or deduct the value of insurance disbursements from the balance owed by Chateau. *See e.g.* Docs. 25-4 at 30–31 and 25-9 at 13, 20–21, 27–28, 34–35, 41–42, 49–50. As such, it is reasonably foreseeable that Chateau may not have received insurance payments for covered events.

[61] *See e.g.* Romero v. Newman, 23 So. 493, 498 (La. 1898); Associated Acquisitions, L.L.C. v. Carbone Props. of Audubon, L.L.C., 962 So. 2d 1102, 1107 (La. App. 4 Cir. 2007); U.S. Bancorp Equip. Fin., Inc. v. Loews Express, L.L.C., 2008 WL 108666, at *8–9 (E.D. La. July 11, 2007).

when lease revenue and insurance payments were unavailable.[62] While the
COVID-19 pandemic and Hurricane Ida certainly created devastating business
conditions for Defendant, they did not render performance impossible. Even
so, the Security Instrument specifically requires Chateau to "restore and repair
promptly . . . any damaged part of the Mortgaged Property . . . whether or not
insurance proceeds . . . are available to cover any costs of such restoration or
repair."[63] Although the Court sympathizes, Defendants defense of
impossibility fails.

Defendant next raises the yet unadopted defense of the *Théorie de
L'Imprévision*. Plaintiff argues in its Reply that Defendant's *Théorie de
L'Imprévision* defense was procedurally waived.[64] The Court notes that
Defendant raises his affirmative defense of the *Théorie de L'Imprévision* for
the first time in his Opposition. While an affirmative defense should be raised
in a responsive pleading pursuant to Federal Rule of Civil Procedure 8(c), the
Fifth Circuit rejects waiver arguments when a defendant raises its affirmative
defense on summary judgment so long as "(1) the defendant raised the
affirmative defense 'at a pragmatically sufficient time,' and (2) the plaintiff
'was not prejudiced in its ability to respond.'"[65] The Court finds that the defense
was raised at a pragmatically sufficient time, and the Plaintiff was given fair
opportunity to respond in its Reply.

Nonetheless, Defendant's *Théorie de L'Imprévision* argument does not
relieve him of personal liability. The *Théorie de L'Imprévision* is a French
doctrine that permits the reformation of contracts when unforeseen

---

[62] Doc. 31 at 13.
[63] Doc. 25-5 at 23–24.
[64] Doc. 32 at 5.
[65] Walton v. City of Verona, 82 F.4th 314, 324 (5th Cir. 2023) (quoting Motion Med Techs.,
L.L.C., v. Thermotek, Inc. 875 F.3d 765, 771–772 (5th Cir. 2017)).

circumstances make the performance of a contractual obligation significantly more onerous for the obligor.[66] The *Théorie de L'Imprévision* has never been adopted by any court applying Louisiana law.[67] French courts use this theory to reform contracts in limited circumstances to protect public interests, however, the same policy concerns are not present here as Defendant is not a public entity.[68] Further, the Court notes that Defendant has already been extended contractual leniency for changed circumstances and increased burden through the execution of multiple forbearance letters.[69] Even if the Court was inclined to adopt this novel defense to liability, Defendant's circumstances make the *Théorie de L'Imprévision* inapplicable.

Defendant further argues that, regardless of the Court's findings as to the contractual waivers, a party may not contractually waive defenses based on the other party's bad faith. Pursuant to Louisiana law, contracts must be performed in good faith, and "[a]n obligee may not recover damages when his own bad faith has *caused* the obligor's failure to perform."[70] In his Opposition, Defendant argues that Plaintiff's "conduct" in the insurance and bankruptcy litigation "raises factual issues" and "serious concerns" about Plaintiff's good faith performance under the Loan Documents.[71]

Regarding the ongoing insurance litigation, Defendant states that "[t]he evidence raises serious questions about [Plaintiff's] good faith under the circumstances, including the extent of its involvement in the Insurance Litigation and its motives for such involvement," and alleges that Plaintiff

---

[66] St. Charles Ventures, L.L.C. v. Albertsons, Inc., 265 F.Supp. 2d 682, 697 (E.D. La. 2003) (citing Hanover Petrol. Corp. v. Tenneco, Inc., 521 So. 2d 1234, 1240 (La. App. 3 Cir. 1988)).
[67] *Id.* at 698.
[68] *Id.* (quoting Bruce Shewe and Robert L. Theriot, *Developments in the Law, 1987–1988, A Faculty Symposium: Obligations*, 49 LA. L. REV. 463, 475–76 (1988)).
[69] *See* Doc. 25-9.
[70] LA. CIV. CODE arts. 1983, 2003 (emphasis added).
[71] Doc. 31 at 14–15.

"teamed up with Borrower's insurers to falsely attack Baldone."[72] Besides these self-serving assertions, Defendant provides no other details, evidence, or factual allegations regarding the insurance dispute. Further, Defendant has failed to provide the Court a plausible basis to believe that additional discovery would reveal more on this issue given the fact that Chateau specifically authorized Lender, and by assumption Plaintiff, to act as its attorney-in-fact for insurance matters and to hold insurance proceeds in escrow.[73]

Defendant also alleges that Plaintiff violated its duty of good faith by attacking his "ability to manage [Chateau], including making patently false and defamatory *per se* statements directed at Defendant, including that [he] falsified judgment(s), which would be a criminal offense."[74] According to Defendant, Plaintiff then used "its false, defamatory statements" to request the appointment of a Chapter 11 trustee.[75] Thereafter, Defendant admits that he "agreed to the appointment of a Chapter 11 trustee" after considering the costs and benefits of the decision.[76] Once again, Defendant fails to raise any evidence as to how Plaintiff's alleged bad faith in the second bankruptcy proceeding could *cause* Chateau and/or Defendant to default on their loan obligations—which became due before the commencement of the second bankruptcy proceeding. Despite the threadbare and conclusory allegations that Plaintiff violated its duty of good faith, the Court finds that Defendant

---

[72] *Id.* at 11, 15–16.

[73] Doc. 25-5 at 30–31; Doc. 25-9 at 2, 13–14, 20–21, 27–28, 34–35, 41–42, 49–50. In particular, the Court cannot conceive how, in light of these provisions and those regarding Chateau's responsibility to repair the mortgaged property whether or not it received insurance proceeds, Plaintiffs actions as alleged by Defendants would *cause* Chateau and/or Defendant to fail to perform their obligations to make payments. *Id.*; Doc 25-5 at 23–24.

[74] Doc. 31-1 at 7.

[75] *Id.*

[76] *Id.* at 8.

failed to raise a genuine issue of material fact regarding Plaintiff's alleged bad faith.

Similarly, Defendant's Opposition argues that liability is barred, or limited, by Plaintiff's impairment of collateral and that summary judgment on liability is premature due to inadequate discovery. Defendant's basis for this defense is that the keeper, Latter & Blum Property Management, Inc., failed to properly manage Chateau's property, causing a 25% decrease in occupancy when Defendant would have expected an increase in occupancy.[77] Here, Plaintiff is statutorily authorized to have a keeper.[78] While a keeper is required to "perform his duties as a prudent administrator," the keeper is not "liable to the mortgagor or the owner . . . for any financial or pecuniary loss or damage claimed to have been suffered by the mortgagor or owner . . . by reason of the administration or management of the property by the keeper or receiver acting as a prudent administrator."[79] In the case of imprudent management, Louisiana law holds the keeper, not the mortgagor, liable.[80] Even then, Defendant presents no evidence—and no plausible basis demonstrating that additional discovery would reveal evidence—that Latter & Blum Property Management, Inc. failed to act as a prudent administrator. Thus, in the absence of any factual support, the Court cannot assume that Defendant could prove that Plaintiff improperly impaired Chateau's collateral.

Therefore, even if Defendant did not validly waive its defenses to personal liability, Defendant has not demonstrated the presence of a genuine

---

[77] *Id.* at 7. Latter & Blum Property Management, Inc. is not joined in this action.
[78] LA. REV. STAT. §§ 9:5136–37.
[79] *Id.* at § 9:5138(A).
[80] To the extent that Defendant is alleging any degree of fraudulent or collusive behavior meant to decrease tenancy, between Plaintiff, the mortgagor, and the keeper, Defendant also fails to raise factual support for these contentions. Further, the Court notes that in the case of imprudent administration, the keeper would also be liable to the mortgagor for any losses caused by its fault.

dispute as to any material fact that would preclude this Court from rendering judgment as to Defendant's personal liability. Accordingly, the Court finds that Defendant has failed to demonstrate the presence of a genuine dispute as to any material fact that prevents summary judgment on Defendant's liability.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Motion is **GRANTED**.

New Orleans, Louisiana this 24th day of October, 2025.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**